# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                               Case No. 20-80067-WRS
                                                                                                                Chapter 11

WEST PACE, LLC,

      Debtor.

## MEMORANDUM DECISION

This Chapter 11 case came before the Court for an evidentiary hearing on September 9, 2020, on the Motion for Relief from the Automatic Stay filed by U.S. Bank., N.A. (Doc. 53), in its capacity as indenture trustee for $24,050,000 The West Pace Village Cooperative District Revenue Bonds, Series 2010, and the Debtor's Objection to Claim 1-1 (Doc. 57). For the reasons set forth below, the objection to claim is overruled and Claim No. 1, filed by U.S. Bank, and as amended, is allowed. In addition, the Court finds that U.S. Bank has shown cause for relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) & (2).

## I. Facts

The Debtor, West Pace, LLC, filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on January 16, 2020. (Doc. 1). On April 2, 2020, U.S. Bank filed Proof of Claim No. 1-1, asserting that it is owed $9,837,073.71, as of the date of the bankruptcy filing, and that this indebtedness is secured by special assessment liens against the Debtor's real property in Lee County, Alabama. The property at issue consists of five separate parcels of land owned by the Debtor (the "Property").

In order to raise capital to fund economic development on the Property, the Debtor petitioned the City of Auburn, Alabama, for the establishment of the West Pace Village Improvement District (the "Improvement District") and the West Pace Village Cooperative District (the "Cooperative District") under §§ 11-99A-1 and 11-99B-1, respectively, of the Code of Alabama. The Improvement District and the Cooperative District (collectively "the Districts") are corporeally identical, and the property encumbered by U.S. Bank's special assessment liens lies within the Districts.

These special assessment liens arise from the "Improvement District Act" of the Code of Alabama. *See* ALA. CODE § 11-99A-1. The provisions of the Improvement District Act provide that "[a]ll preliminary and final assessments shall constitute liens upon the property assessed[.]" ALA. CODE § 11-99A-31. Additionally, these special assessment liens "shall have priority over all other liens, other than liens for ad valorem taxes." *Id*. The source of these special assessments was designed to be from the sale of the parcels of realty and from subsequent retail development in the Districts.

Under the terms of the Trust Indenture of February 1, 2010 (the "Indenture"), U.S. Bank is the indenture trustee. In order to finance capital improvements within the Districts, bonds were issued in the amount of $24,050,000 to raise capital to accomplish the desired development. In order to secure payment on the bonds, the Improvement District filed a petition with the City of Auburn for the levy of special assessments. The Debtor consented to this petition. Under the terms of Section 3.1 of the Funding Agreement, these special assessments were assigned by the Improvement District to the Cooperative District, then, under the terms of the Indenture, the Cooperative District granted U.S. Bank, as indenture trustee, a security interest to any and all

money held in funds established under the terms of the Indenture as well as its interest in the special assessments levied by the City of Auburn against the Property. *See* Exhibit CR 1 at p. 493.

The sale of the bonds resulted in proceeds of roughly $14.4 million, which were placed in the construction fund. Approximately $12 million of this sum was released in order to facilitate infrastructure and public improvements. The remaining $2.4 million was kept in the Construction Holdback Account, which, under § 8.9(b) of the Indenture, will only be released once one of the four unsold lots is sold or the subject of a long-term lease resulting in the full payment of the special assessments and the acquisition of a life insurance policy by Mr. Thomas Hayley in favor of U.S. Bank. At present, Mr. Hayley has not acquired a life insurance policy in favor of U.S. Bank, none of the four remaining lots have sold, nor are any of the lots subject to long-term leases.

The Debtor is delinquent in special assessment payments for fiscal years 2012, 2013, 2014, and 2015.[1] *See* Claim 1-2. In 2015, as a result of the Debtor's continued failure to pay special assessments, U.S. Bank sued the Districts, the Debtor, and other third parties, in the Circuit Court of Lee County, Alabama, in order to foreclose on the Property.

The Debtor moved to dismiss the lawsuit on the grounds that U.S. Bank lacked standing to foreclose. The state court denied Debtor's motion. The Debtor then filed six counterclaims against U.S. Bank, which were each eventually dismissed by the state court. U.S. Bank subsequently prevailed on summary judgment motions on all of its claims against the Debtor. The Debtor then appealed the decision all the way to the Supreme Court of Alabama before filing the instant petition while the appeal was still pending.

---

[1] U.S. Bank alleges that the Improvement District has been derelict in its duties to levy special assessments for fiscal years 2018, 2019, and 2020.

U.S. Bank filed a proof of claim for $9,837,073.71, as secured by the Property. Claim 2-1. The Debtor objected to this claim on the grounds that U.S. Bank is in fact not a creditor of the Debtor, and that U.S. Bank has failed to account for the $2,400,000 currently held in the Construction Fund. Doc. 57. In turn, U.S. Bank moved for relief from the automatic stay under 11 U.S.C. §§ 362(d)(1), (2), and (3). The Debtor did not file a Plan of Reorganization prior to the expiration of the exclusivity period on May 15, 2020; the Debtor did file a Plan on October 7, 2020, which has not yet come before the Court for hearing. Doc. 157. U.S. Bank filed a combined Disclosure Statement and Plan of Liquidation on August 27, 2020. Doc. 127. The Court approved U.S. Bank's Disclosure Statement during the hearing on October 8, 2020, and set a confirmation date of November 18, 2020.

## II. Law

### A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) & (G). This is a final order.

### B. The Debtor has failed to rebut the presumption of *prima facie* validity of U.S. Bank's secured claim.

Under the Bankruptcy Code, "[a] properly filed proof of claim constitutes prima facie evidence of both the validity and amount of the claim." *In re Barron*, 325 B.R. 17, 20 (Bankr. M.D. Ala. 2005) (citing Fed. R. Bankr. Proc. 3001(f)). As this Court noted in *Barron*, "the objecting party has the burden of producing evidence sufficient to meet the evidentiary weight

-4-

Case 20-80067    Doc 173    Filed 10/19/20    Entered 10/19/20 17:07:04    Desc Main
Document    Page 4 of 13

accorded to the claim under the Rules." *Id.; see also In re Crutchfield*, 492 B.R. 60, 69 (Bankr. M.D. Ga. 2013) ("The objecting party bears the burden of rebutting the presumption through 'facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim.'") (quoting *In re LJL Truck Ctr., Inc.*, 299 B.R. 663, 666 (Bankr. M.D. Ga. 2003)). The *Barron* Court further held that "[a]lthough there is a shifting burden of proof in a claims contest, the ultimate burden of persuasion rests upon the creditor." *Id.* (citing *In re Allegheny Int'l, Inc.* 954 F.2d 167 (3d Cir. 1992)) *see also In re Walston*, 606 Fed.App'x 543, 546 (11th Cir. 2015) ("The burden then shifts to the objecting party to 'come forward with enough substantiations to overcome the claimant's prima facie case.'") (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 701 (5th Cir. 1977) (quotations omitted)).

In the case at bar, U.S. Bank timely completed and filed a proof of claim. *See* Claim 1-1.[2] Therefore, its proof of claim enjoys as prima facie presumption of validity under Fed. R. Bankr. Proc. 3001(f). Therefore, the Debtor has the burden to rebut the presumption with facts carrying equal weight as the allegations contained in U.S. Bank's proof of claim.

In its Objection to Claim, the Debtor advanced two grounds for objection. First, the Debtor asserts that U.S. Bank is not a secured creditor of the Debtor. *See* Doc. 57. Second, the Debtor claims that it is entitled to a setoff of roughly $2,400,000 for construction holdback funds currently held by U.S. Bank.

In furtherance of its first cause for objection, the Debtor claimed that, due to the multilayered arrangement between the Bondholders, the Improvement District, the Cooperative

---

[2] After the Debtor filed its Objection to Claim, but before the matter came before the Court for trial, U.S. Bank amended its proof of claim by adding copies of special assessment certificates for 2012 through 2017. *See* Claim 1-2.

District, and U.S. Bank, that U.S. Bank is merely "a representative of the bondholders and is not a creditor of the Debtor but is a creditor of the West Pace Village Cooperative District." Doc. 57.

The Debtor offered no salient facts in its objection to support its assertion that it is entitled to a $2,400,000; the only additional fact alleged is that U.S. Bank had not provided an accounting for "all of the other payments made by other entities that should reduce or be offset against any amount due to U.S. Bank and/or West Pace Village Cooperative District." Doc. 57.

In its Response, U.S. Bank addressed the Debtor's grounds for objections in turn, buttressing its proof of claim with additional facts relating to the holdback funds and references to the Funding Agreement and Trust Indenture. In its response, U.S. Bank claimed that the Debtor was not entitled to the $2,400,000 construction holdback because the Debtor had not fulfilled certain contractual prerequisites, such as Mr. Hayley's failure to secure a life insurance policy. *See* Doc. 65.

At trial, U.S. Bank called Mr. Gehman, a default specialist for U.S. Bank, Mr. Eidson, an appraiser hired by U.S. Bank to appraise the property, and Mr. Hayley, the Debtor's principal, as an adverse witness.[3] The Debtor called no witnesses.

In support of Debtor's first prong of the objection, the Debtor had Mr. Hayley explain, in his own words, and with references to certain sections of the Trust Indenture and Funding Agreement, the relationship between the Improvement District, the Cooperative District, U.S. Bank, the Debtor, and the Bondholders. Additionally, on cross examination, counsel for the Debtor asked Mr. Gehman about the section of the Trust Indenture that U.S. Bank relied upon to

---

[3] The trial combined the Motion for Relief filed by U.S. Bank (Doc. 53) and Debtor's Objection to Claim of U.S. Bank (Doc. 57). As U.S. Bank was the moving party in the first-filed Motion, the Court permitted U.S. Bank to present its case-in-chief first at the combined hearing.

-6-

Case 20-80067    Doc 173    Filed 10/19/20    Entered 10/19/20 17:07:04    Desc Main
Document      Page 6 of 13

support its proof of claim.  Finally, the Debtor alluded to unknown sums of money located in certain bank accounts.

The vague facts alleged in its Objection to Claim are not nearly substantial enough to counterbalance the proof of claim.  Additionally, the Debtor did not offer any newly-discovered evidence or recently unearthed facts at trial to bolster its objection.  Accordingly, the Court finds that the Debtor has not carried its burden to rebut the prima facie presumption of validity afforded to the claim of U.S. Bank, and overrules the Debtor's Objection to Claim.

### C.  U.S. Bank is entitled to relief from the Automatic Stay

The Bankruptcy Code provides that "the filing of a bankruptcy petition automatically halts efforts to collect prepetition debts from the bankrupt debtor outside the bankruptcy forum." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582, 589 (2020) (citing 11 U.S.C. § 362(a)).  The automatic stay afforded by 11 U.S.C. § 362(a) "bars commencement or continuation of lawsuits to recover from the debtor, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property." *Id.*

A creditor or party in interest may move for relief from the automatic stay under § 362(d), which states that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> > (A) the debtor does not have an equity in such property; and
> > (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

### 1. U.S. Bank is entitled to relief under 11 U.S.C. § 362(d)(1)

U.S. Bank seeks relief from the automatic stay under 11 U.S.C. 362(d)(1) to resume litigation in state courts to defend an appeal to the Supreme Court of Alabama and to obtain a judgment fore foreclosure of the Property. (Doc. 53). Under the Bankruptcy Code, a party requesting relief from the automatic stay under § 362(d)(1) "must first present at least a prima facie showing of 'cause.'" *In re Mainous*, 610 B.R. 916, 920 (Bankr. S.D. Ala. 2019). However, § 362 "does not define what constitutes 'cause' leaving Courts to make such determination based on the totality of the circumstances." *Id.* (citing *In re George*, 315 B.R. 624 (Bankr. S.D. Ga. 2004)).

The Bankruptcy Code requires that a finding as to "[w]hether cause exists to grant stay relief must be determined on a case by case basis based upon the totality of the circumstances in each particular case." *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006) (citations omitted), *aff'd,* 2007 WL 1222575 (M.D. Fla. Apr. 24, 2007); *see also In re Mantachie Apartment Homes, LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013) (same effect). The Bankruptcy Court enjoys broad discretion when determining whether a moving party is entitled to relief from the automatic stay. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989) (citations omitted).

Additionally, "[t]he totality of the circumstances of a case encompasses, among other things, how the parties have conducted themselves, their good or bad faith, and their motives." *In re Mack*, 347 B.R. 911, 915. When evaluating the conduct of the parties, "[b]oth prepetition and postpetition conduct is relevant to a totality of the circumstances analysis." *Id*. at 916 (citing *In re Trident Assoc. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995) (other citations omitted). Relief from stay is appropriate when the Debtors actions in its bankruptcy proceeding constitute bad faith. *In re Mack*, 347 B.R. 911 (Bankr. M.D. Fla. 2006) ("A debtor who does not act in good faith is not entitled to continue to enjoy the benefits, such as the automatic stay, afforded by the Bankruptcy Code.") (citation omitted).

In the case at bar, the Debtor and U.S. Bank have been engaged in five years of continuous litigation over the Property. As noted in part I, *supra*, U.S. Bank has thus far prevailed at every stage of the state court litigation. The capstone of this string of litigation currently sits idly before the Supreme Court of Alabama due to the automatic stay. In its Objection to Claim, the Debtor raises the very same arguments it advanced during the five years of state court litigation. The Debtor's only apparent justification for its recycling of prior unavailing arguments is that the Alabama Supreme Court had not ultimately resolved the case.

Based on the totality of the circumstances, the Court concludes that the Debtor's petition was not filed in good faith, and the subsequent litigation in the instant case is nothing more than an attempt to use the Bankruptcy Code to relitigate the same issues raised during the preceding five years of state court litigation. Therefore, U.S. Bank is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1).

## 2. U.S. Bank is entitled to relief under 11 U.S.C. § 362(d)(2)

The Debtor listed the Property in its schedules with a value of $7,894,980 based on the Lee County, Alabama, Tax Assessor's valuation. (Doc. 25). At trial, the Court heard testimony from Mr. Greg Eidson, an appraiser hired by U.S. Bank to appraise the Property. Mr. Eidson, through his testimony and written appraisal of the Property, valued the Property at $8,600,000. (*See* Exhibit CR 7).

In opposition to Mr. Eidson's appraisal and testimony, the Debtor's principal, Mr. Thomas Hayley, testified that in his opinion, the Property commands a value of between $30,000,000 and $104,000,000. Hayley offered no tangible rationale for his new valuation beyond asserting that Mr. Eidson failed to question the owners of neighboring parcels as to the value of their respective land. The Debtor purportedly acquired an appraisal of its own, but did not call the appraiser himself to testify about the appraisal.

Mr. Hayley is not a layman in the field of real estate; his years of experience transacting commercial real estate deals have undoubtedly granted him more knowledge than the average person. However, that is a sword that cuts both ways. Hayley, as the sole member of the Debtor, signed off on the Debtor's schedules showing a value of $7,894,980 for the Property based on the Tax Assessor's valuation.[4]

Hayley's testimony at trial that the tax valuation undervalues the Property is belied by his actions preceding the bankruptcy. On cross examination, Hayley testified that he, on behalf of the Debtor, challenged the county's tax valuation as being too high. The Debtor cannot eat its cake

---

[4] As of the date of this Memorandum Decision, the Debtor has not amended its schedules to reflect a change in value for the Property.

Case 20-80067    Doc 173    Filed 10/19/20    Entered 10/19/20 17:07:04    Desc Main
Document      Page 10 of 13

and have it, too. It cannot challenge a valuation of $7,894,980 as being too high and then challenge an appraisal of $8,600,000 on the same Property as being too low.

Upon review of the testimony and evidence presented at trial, the Court concludes that the testimony and appraisal provided by Mr. Eidson offer the most thorough and accurate assessment as to the value of the Property. Accordingly, the Court finds that the value of the Property is $8,600,000. As discussed in part II(B), *supra*, the Property is encumbered by special assessment liens securing an indebtedness of $9,837,073.71 owed to U.S. Bank. As such, the Court finds that the Debtor has no equity in the Property.

Further, the Court finds that the Property is not necessary for the Debtor's effective reorganization. As the Supreme Court noted, "[o]nce the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.* 484 U.S. 365, 375 (1988) (citing 11 U.S.C. § 362(g) (italics in original). The Supreme Court further explained that "[w]hat this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *Id*. at 375-76 (italics in original). While the Supreme Court did not set a definitive time table for measuring a Debtor's progress toward reorganization, the Court noted several cases where stay relief was granted under § 362(d)(2) for failure to make progress toward reorganization within a year. *See Id.* at n1. Finally, the Supreme Court noted that "even within th[e exclusivity] period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Id*. at 376 (footnote omitted).

In the case at bar, the Debtor failed to file a Plan of Reorganization before the expiration of the exclusivity period on May 15, 2020. In fact, the Debtor filed its own Plan and Disclosure Statement on October 7, 2020, one day before the Court held a hearing on the Disclosure Statement and Plan filed by U.S. Bank. An effective reorganization is impossible unless the Debtor actively and diligently effectuates such reorganization.

The Debtor's failure to timely file a Plan, actively and conspicuously market the Property, and pay special assessments, lead the Court to one of two conclusions: The Debtor's failure to timely file a Plan, market the Property, and pay special assessments was either intentional because Mr. Hayley knew reorganization was impossible from the onset of the case, or these failures were the result of a progressive realization of futility that manifested during the nine months this case languished on the docket. The Court is of the opinion that at this late juncture, the Debtor's reasoning behind its failures is immaterial; as such, the Court finds that the Property is not necessary for an effective reorganization. Accordingly, U.S. Bank is entitled to stay relief under 11 U.S.C. § 362(d)(2).

### 3. U.S. Bank is not entitled to relief under 11 U.S.C. § 362(d)(3)

In its Motion for Relief, U.S. Bank moved for relief from the automatic stay alleging that the Debtor under 11 U.S.C. § 362(d)(3), alleging that the Property is a single asset real estate. At trial, U.S. Bank did not offer any evidence or testimony to support this claim. Accordingly, the Court finds that U.S. Bank is not entitled to relief under 11 U.S.C. § 362(d)(3).

### III. Conclusion

For the reasons set forth above, the Court finds that the Debtor failed to carry its burden of rebutting the presumption of validity afforded to the Proof of Claim filed by U.S. Bank. Accordingly, the Debtor's Objection to the Claim of U.S. Bank is hereby **OVERRULED** and the claim is allowed as filed.

Further, the Court finds that relief from the automatic stay is warranted under 11 U.S.C. §§ 362(d)(1) and (2). Accordingly, U.S. Bank's Motion for Relief from the Automatic Stay is hereby **GRANTED**.

Done this 19th day of October, 2020.

William R. Sawyer
United States Bankruptcy Judge

c: Debtor
Michael A. Fritz, Sr., Attorney for Debtor
John D. Elrod, Attorney for U.S. Bank
Bankruptcy Administrator
U.S. Bank, N.A.