# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:

WEST PACE, LLC,

    Debtor.

Case No. 20-80067-CLH
Chapter 11

## MEMORANDUM OPINION AND ORDER OVERRULING CLAIM OBJECTION

On February 19, 2025, this matter came before the Court for hearing on the Objection to Claim 2-1 (the "Objection") [Doc. No. 332][1] filed by Thomas Hayley, Hayley Family Partnership, Ltd., Redd Family Partnership, LLP, HayRay, L.L.C., Home Yard & Garden, Inc., Lake Martin, Inc., and Eagle Management, L.L.C. (collectively, the "Objectors"); the State of Alabama's Response to the Objection to Claim 2 Filed by Thomas Hayley, et al. [Doc. No. 341]; and the Trustee's Joinder to the State of Alabama's Response to the Objection to Claim 2 Filed by Thomas Hayley, et al. [Doc. No. 342]. Based on the pleadings of record, the arguments presented at the hearing and in the parties' respective post-hearing briefs, and for the reasons set forth below, the Objection is OVERRULED.

### I.    JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

---

[1] "Doc. No." refers to the docket number for a filing in the instant bankruptcy case, Case Number 20-80067.

## II. INTRODUCTION AND BACKGROUND

A. Introduction

Unlike many Chapter 11 cases, this case did not involve thousands, hundreds, or even dozens of creditors.[2] At its core, this case was a continuation in bankruptcy court of two disputes that had been pending in state court in the years preceding the bankruptcy filing: 1) a dispute between West Pace, LLC (the "Debtor") and U.S. Bank, National Association, as Indenture Trustee for those certain $24,050,000 The West Pace Village Cooperative District Revenue Bonds, Series 2010 (U.S. Bank"); and 2) a dispute between the Debtor and the State of Alabama, Department of Conservation and Natural Resources ("DCNR").

State court litigation between the Debtor and DCNR (the "State Court Litigation") commenced in 2012 and was set for trial in early 2020. Instead of proceeding with the State Court Litigation to its conclusion, the Debtor filed this bankruptcy case on January 16, 2020 (the "Filing Date"). The Debtor then attempted to relitigate its disputes with both U.S. Bank and DCNR through the claim objection process. However, the objection to U.S. Bank's claim was overruled, and the Debtor did not prosecute its objection to DCNR's claim – failing to produce evidence in favor of the objection. The Debtor also forfeited its exclusive right to file a Chapter 11 plan and unsuccessfully challenged the plan proposed by U.S. Bank. Over twelve years after the commencement of the State Court Litigation, over four and a half years after the Filing Date, nearly four years after confirmation of U.S. Bank's Chapter 11 plan (the "Plan"), and over two years after the Objectors were sued in a related adversary proceeding, the Objectors filed the Objection. In the Objection and related briefs, the Objectors lambast the decision of Marshall Glade, as

---

[2] Only four proofs of claim were filed in the Debtor's case. In addition to the claim made the subject of the Objection, claims were filed by U.S. Bank, National Association, as Indenture Trustee for those certain $24,050,000 The West Pace Village Cooperative District Revenue Bonds, Series 2010; BBVA Compass; and the West Pace Improvement District.

2

Liquidating Trustee of West Pace, LLC (the "Liquidating Trustee") to withdraw the Debtor's original objection to DCNR's claim. The Objectors intimate that the merits of the State Court Litigation were soundly in the Debtor's favor and that the Debtor was on the verge of victory – but for the bankruptcy case that the Debtor *voluntarily* filed on the *eve of trial*. The Debtor's and the Objectors'[3] actions belie their arguments, and their inaction in this case is fatal to the Objection.

**B. Background**

The Debtor began developing property along the I-85 corridor, just west of Chewacla State Park, in the early 2000s. [Doc. No. 341]. In 2008, DCNR granted certain easements to the Debtor, and, in exchange, the Debtor agreed to construct multiple structures in Chewacla State Park. [Doc. No. 341]. After the Debtor allegedly failed to perform under the agreement and created unsafe conditions along a bicycle trail in Chewacla State Park, DCNR commenced the State Court Litigation. [Doc. No. 341]. After eight years, trial was scheduled for early 2020. [Doc. No. 341]. On the eve of trial, the Debtor filed a voluntary petition under Chapter 11. [Doc. No. 1].

For months after filing bankruptcy, Debtor attempted to relitigate issues that had already been disposed of in a state court lawsuit with U.S. Bank and that were ripe for trial in the State Court Litigation with DCNR. On April 17, 2020, DCNR filed a proof of claim for $1,669,991.49, based on the Debtor's breach of their 2008 agreement (the "DCNR Claim"). On May 27, 2020, the Debtor filed an objection to the DCNR Claim. [Doc. No. 68]. The objection summarily denied liability to DCNR without any supporting facts or legal argument. [Doc. No. 68]. On June 19, 2020, DCNR filed a response to the Debtor's claim objection, contending that the Debtor's objection contained insufficient evidence to overcome the DCNR Claim's prima facie validity under FED. R. BANKR. P. 3001(f). [Doc. No. 77]. The Debtor did not file a reply, and the Court

---

[3] The relationship between the Debtor and each of the Objectors is more fully explained in Section 3.B.

held a telephonic hearing on July 9, 2020, at which point it took the matter under advisement. [Doc. No. 83].

The Debtor failed to propose a plan during the exclusivity period under 11 U.S.C. § 1121(b). After this period expired, U.S. Bank proposed the Plan, which provided for the appointment of a liquidating trustee to sell the Debtor's real property and investigate and pursue avoidance actions against certain unsecured creditors. [Doc. No. 127]. Over a month after U.S. Bank proposed the Plan, the Debtor filed a plan under which it proposed to pay $10,000.00 to DCNR on account of the DCNR Claim. [Doc. No. 159]. The Debtor's plan garnered little support. On November 20, 2020, the Court entered an order confirming the Plan (the "Confirmation Order"). [Doc. No. 221].

Under the Plan, the Liquidating Trustee was appointed. [Doc. No. 161]. Pursuant to the Plan and the related liquidating trust agreement (the "Liquidation Trust Agreement"), the Liquidating Trustee has exclusive authority to object to claims and pursue avoidance actions to fulfill unpaid claims. [Doc. No. 161]. The Liquidating Trustee withdrew the Debtor's objection to the DCNR Claim on March 7, 2022. [Doc. No. 255]. After the Liquidating Trustee's sale of the Debtor's real estate, U.S. Bank's claim was paid in full. The other two claims were either satisfied or disallowed. Only the DCNR Claim remains, although a portion has been paid. [Doc. No. 304].

On January 15, 2022, the Liquidating Trustee initiated an adversary proceeding [Adv. Pro. Doc. No. 1][4] against the Objectors, asserting causes of action for breach of fiduciary duty and the avoidance and recovery of preferential and fraudulent transfers. In the adversary proceeding, the Objectors subpoenaed DCNR and examined DCNR's representative about issues related to the

---

[4] "Adv. Pro. Doc. No." refers to the docket number for a filing in the related adversary proceeding filed by the Liquidating Trustee, Adversary Proceeding Number 22-08001.

validity of the DCNR Claim. [Adv. Pro. Doc. No. 55, Exhibits 1 & 2]. After DCNR's representative failed to answer questions related to the underlying claim to the Objectors' satisfaction, the Objectors filed a motion to compel and, on October 10, 2024, filed the Objection. [Adv. Pro. Doc. No. 55]; [Doc. No. 332].

### III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

**A. The Objectors Lack Standing to Object to the DCNR Claim.**

It is a well-settled principle that a confirmed Chapter 11 plan "binds its debtors and creditors as to *all* the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action." *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 21 (Bankr. S.D.N.Y. 2014) (emphasis in original). Under 11 U.S.C. § 1141(a), the terms of a confirmed plan govern who may object to a claim. *See* 11 U.S.C. § 1141(a). To determine who possesses this authority, plan language must be scrutinized on a case-by-case basis. *See, e.g., Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002); *In re Equip. Acquisition Res., Inc.,* 483 B.R. 823, 831 (Bankr. N.D. Ill. 2012).

Courts commonly approve liquidating plans conferring on the liquidating trustee the sole power to object to claims. *See, e.g., In re Abengoa Bioenergy Biomass of Kan., LLC*, Case No. 16-10446, 2018 Bankr. LEXIS 1361, *13 (Bankr. D. Kan. May 7, 2018); *In re W. Asbestos Co.*, 313 B.R. 832, 845 (Bankr. N.D. Cal. 2003). These courts have recognized the sound public policy of orderly administration of the estate that is advanced by allowing a liquidating trustee to have the exclusive power to object to claims. *See In re Abengoa Bioenergy Biomass of Kan., LLC*, Case No. 16-10446, 2018 Bankr. LEXIS 1361, *13 (Bankr. D. Kan. May 7, 2018); *In re W. Asbestos Co.*, 313 B.R. 832, 845 (Bankr. N.D. Cal. 2003). There being no public policy exception or general

prohibition against liquidating trustees having the exclusive power to object to claims, the plain language of the plan controls.

Section 3.2 of the Liquidation Trust Agreement provides as follows:

> The Liquidating Trustee shall have standing and the exclusive right to reconcile, object to, settle, and make distribution decisions related to Claims, and the Liquidating Trustee may rely on the Debtor's schedules and/or the official claims register maintained in the Debtor's Bankruptcy Case in reviewing, reconciling, or causing the Liquidation Trust to allow, object to, settle or otherwise resolve any Claims[.]

[Doc. No. 197]. The Court explicitly approved the Plan Supplement containing the Liquidation Trust Agreement and incorporated it into the Confirmation Order. [Doc. No. 221]. The plain language of the Liquidation Trust Agreement grants the Liquidating Trustee the exclusive ability to object to claims. [Doc. No. 197]. The language is clear that this power rests solely in the Liquidating Trustee to the exclusion of all others.

To the extent the Objectors assert that the language in the Liquidation Trust Agreement does not control because it is not contained in the Confirmation Order, this argument fails. The clear language of the Confirmation Order incorporates the Liquidation Trust Agreement into the Plan. [Doc. No. 221]. However, even without this explicit incorporation of the Liquidation Trust Agreement, its terms would still be binding because "[a]ll documents relating to a confirmation order are part of the plan and should be considered in interpreting a plan's provisions." *In re Arcapita Bank B.S.C.(c)*, 520 B.R. at 22. Consequently, the language of the Liquidation Trust Agreement is operative under the Plan and dictates that the Liquidating Trustee's authority to object to claims is exclusive.

The Objectors also argue that they have standing as parties in interest and should be allowed to bring claim objections based on the United States Supreme Court's ruling in *Truck Insurance Exchange v. Kaiser Gypsum Company,* 602 U.S. 268 (2024). The Objectors fail to

6

Case 20-80067   Doc 366   Filed 04/17/25   Entered 04/17/25 16:06:28   Desc Main
Document     Page 6 of 10

recognize the critical timing difference between *Kaiser* and the present case.  In *Kaiser*, the insurer properly raised the issue of whether it had standing to raise objections prior to plan confirmation. 602 U.S. at 271.  That is not the case here.  The Objectors sat on their rights for over four years from confirmation of the Plan, which granted to the Liquidating Trustee *exclusive* standing to object to claims.  If the Objectors had raised the "party in interest" issue prior to confirmation, then their standing argument would deserve consideration.[5]  Now, the Plan controls.  Accordingly, the Objectors lack standing to object to the DCNR Claim.

    **B. The Objectors Waived the Right to Bring the Objection.**

Even if the Plan had been silent on the Objectors' right to bring claim objections, the Objectors have waived their right to do so.  The Debtor first had the opportunity to litigate the merits of the DCNR Claim in the State Court Litigation.  The Debtor allowed that litigation to reach its ultimate stages before voluntarily filing for bankruptcy and halting the proceedings.  The Debtor then chose to object to the DCNR Claim in this case. However, it failed to provide a modicum of support for the objection, and after DCNR filed a response, the Debtor failed to further prosecute the objection.

Then, the Debtor failed to propose a plan during its exclusive opportunity to do so.  Due to this failure, U.S. Bank met its burden of confirming a competing plan – the Plan – with terms less favorable to the Debtor.  Pursuant to its exclusive right, as authorized by the Plan and Liquidation Trust Agreement, the Liquidating Trustee withdrew the Debtor's original objection to the DCNR Claim – a decision that the Objectors have heavily criticized due to the Objectors' alleged

---

[5] The Objectors have raised an additional argument that they lacked notice to raise issues pre-confirmation because they were only aware of the litigation once the Liquidating Trustee brought avoidance actions against them. This contention will be addressed in the following section and, once light is shed on the relationship between the Objectors and the Debtor, the absurdity of this argument is revealed.

likelihood of success in the State Court Litigation. However, the Objectors' assertions simply are not credibly aligned with the procedural history of the State Court Litigation and this case.

Even if factors other than the dispute with DCNR precipitated the bankruptcy filing, the Objectors fail to explain the Debtor's failure to prosecute its original objection to the DCNR Claim. After all, the Debtor was in the best position to litigate the original claim objection, having been engaged in the State Court Litigation for the previous eight years and possessing institutional knowledge of all relevant facts. Through either a conscious decision or neglect, the Debtor allowed the claim objection to languish. The Debtor, and by implication, the Objectors, had ample opportunity to liquidate the DCNR Claim yet failed to do so. It is unreasonable to now complain that the Liquidating Trustee declined to take up the mantle that the Debtor voluntarily relinquished.

The Court will not allow the Objectors to attempt to liquidate the DCNR Claim now – four and a half years after the Filing Date, over four years after confirmation, nearly three years after the Debtor's original objection to claim was withdrawn, and only after other procedural defenses in the associated adversary proceeding have failed.

As set forth in Section 3.A., the Plan gave exclusive standing to bring objections to claims and pursue avoidance actions to the Liquidating Trustee. However, even if the Objectors could circumvent the exclusive standing of the Liquidating Trustee to bring objections to claims, the time for doing so has long since passed. Under the Plan's terms, there exists a 180-day window for bringing claim objections. This period begins to run from the point at which all claims have been allowed or disallowed. Accordingly, when the Liquidating Trustee withdrew the objection to the DCNR Claim on March 7, 2022, this period began to run. The 180-day period elapsed long before the Objection was filed on October 10, 2024.

8

Case 20-80067    Doc 366    Filed 04/17/25    Entered 04/17/25 16:06:28    Desc Main
Document    Page 8 of 10

The Objectors suggest that they should not be precluded from bringing the Objection because they were not aware of this case until the associated adversary proceeding was brought against them. The Objectors are not strangers to this case in any plausible sense. Thomas Hayley was the Debtor's managing member, and five of the remaining six Objectors are owned or controlled by Thomas Hayley. [Doc. No. 1]. Lake Martin, Inc., Home Yard & Garden, Inc., HayRay, L.L.C., Hayley Family Partnership, Ltd., and Eagle Management, L.L.C are all located at 1695 East University Drive, Auburn, Alabama 36830, the same address listed on the Debtor's petition and an address which is used by Thomas Hayley. [Doc. No. 1 & Doc. No. 341, Exhibits A-D]. Mr. Hayley is the sole member of Hayray, L.L.C. [Doc. No. 341, Exhibit B]. He was also the President of Lake Martin, Inc. and Home Yard & Garden, Inc. in 2020 according to the Secretary of State reports attached to DCNR's response to the Objection. [Doc. No. 341, Exhibit C]. Mr. Hayley was the sole founding member and is still the sole member of Eagle Management, L.L.C. [Doc. No. 341, Exhibit D]. He is also the agent for service of process for Hayley Family Partnership, Ltd and a majority shareholder and president of an entity that is the general partner of Hayley Family Partnership, Ltd. [Doc. No. 341, Exhibit A].

Apart from Redd Family Partnership, LLLP, *which is an actual member of the Debtor*, the Objectors have intimate ties to the Debtor and are either wholly owned or effectively controlled by Thomas Hayley. [Doc. No. 341]. Because of these substantial connections, the Objectors' notice argument falls flat. In addition, the Objectors have cited no precedent supporting the proposition that potential defendants in post-confirmation litigation should be afforded an opportunity to collaterally attack causes of action against them through the claim objection process. Nevertheless, even if the Court was persuaded by the Objectors' argument that they only received notice once the adversary proceeding was filed on January 15, 2022, this was still prior

9

to the date that the Liquidating Trustee withdrew the objection to the DCNR Claim. Therefore, the Objectors would have had notice and an opportunity to file the Objection well within the required time period.

Because the Debtor, and now the Objectors, have had numerous opportunities to prosecute an objection to the DCNR Claim and chose not to, they have waived their right to object and are prohibited from doing so now.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the Objectors do not have standing, or in the alternative, have waived the right to bring the Objection. Accordingly, it is hereby

ORDERED that the Objection is OVERRULED.

Done this 17th day of April, 2025.

Christopher L. Hawkins
United States Bankruptcy Judge

c:    Debtor
Marshall Glade, as Liquidating Trustee of West Pace, LLC, Trustee
John D. Elrod, Attorney for Liquidating Trustee
Clark R. Hammond, Attorney for Redd Family Partnership, LLLP, et al.
Gary W. Lee, Attorney for Redd Family Partnership, LLLP, et al.
Joel Connally, Attorney for Redd Family Partnership, LLLP, et al.
Erin Amelia Haston, Attorney for Redd Family Partnership, LLLP, et al.
Redd Family Partnership, LLLP
Eagle Management, L.L.C.
Thomas Hayley
State of Alabama, Department of Conservation and Natural Resources
William Wesley Causby, Attorney for State of Alabama, Department of Conservation and Natural Resources